IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Stephen J. Green, | ) | Case No. 2:24-cv-00267-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Mr. Nelson, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Stephen J. Green, appearing *pro se* and *in forma pauperis*, brings this civil action alleging violations of his First, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 based on certain deprivations at his previous and current correctional institutions. (Dkt. No. 1.) This matter is before the Court on Defendant Brian Stirling's Motion to Dismiss (Dkt. No. 38) and Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Dkt. No. 14).[1] For the reasons set forth below, the undersigned recommends both motions be denied.

## BACKGROUND

### A. Factual Background

Plaintiff is currently an inmate within the South Carolina Department of Corrections ("SCDC"). In his verified Amended Complaint, Plaintiff alleges that when he was transferred to Perry Correctional Institution ("Perry") in July 2021, he "was subjected to a complete and total ban of the use of telephone to communicate with immediate family such as mother, sisters, grandparents, or friends." (Dkt. No. 44 at 5.) Plaintiff alleges he was also subject to a ban on the "ability to use a tablet to communicate" and a "total and complete ban on [his] visitation." (*Id.*)

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

1

According to Plaintiff, the ban on his "telephone, tablet, and visitation was implemented at the direction of" Defendants SCDC Director Brian Stirling, SCDC Deputy Director Joel Anderson, SCDC Assistant Deputy Director Dennis Patterson, and SCDC Regional Deputy Director Willie Davis, "and enforced by" Defendant Warden Charles Williams "and staff members/officers at Perry." (*Id*.) Plaintiff alleges this this ban continued when he was transferred to Broad River Correctional Institution ("Broad River") in January 2023. (*Id*.) According to Plaintiff, Defendant Warden Nelson told Plaintiff he was "being punished not for anything you have done but for what you might do." (*Id*. at 6.) When Plaintiff asked "how long" the ban would last, Warden Nelson responded, "until you take care of the Lee County Riot case." (*Id*.)

Plaintiff alleges that for the next two to three weeks, he was placed in the Restrictive Housing Unit ("RHU") "by himself with no other inmates present." (*Id*. at 7.) After that point, "SSR[2] Super Max inmates were brought to Broad River, while [the] SSR building was being remodeled." (*Id*.) Plaintiff alleges Defendant Deputy Warden Hollis told Plaintiff he was not in SSR custody, but she "would be responsible for Plaintiff being provided shower, recreation, and meals." (*Id*.) Hollis further told Plaintiff that Defendants Anderson and Patterson "had instructed her that Plaintiff was not to be allowed to use the telephone and/or tablet." (*Id*.)

Plaintiff alleges he then sent a request to staff form to Defendant Stirling "via General Counsel" as well as to Warden Nelson and "asked if they could explain how is it that the most restricted inmates (SSR) are given access to the policy prescribed phone and tablet access, yet Plaintiff which is classified as SO-Level 3/Behavioral Level-3, is denied the policy prescribed phone, tablet, access." (*Id*. at 7–8 (verbatim).) Plaintiff alleges he has not received a response to this request. (*Id*. at 8.)

---

[2] SSR is an acronym for Substantial Security Risk.

Plaintiff alleges that after several unsuccessful attempts "to get SCDC staff/officials to address the deprivations and violations of Plaintiff's constitutional rights," he "began asking the mental health officer to document the complaint and that Plaintiff was suffering from stress, anxiety, and depression from not being able to communicate with family members." (*Id*.) According to Plaintiff, the SSR tablets "do not have telephone or personal messaging applications, and still Plaintiff is denied the use of a tablet for educational or entertainment purposes" as well as a radio. (*Id*. at 9.) Plaintiff alleges such deprivation evidences Defendants' "malicious and harmful intent." (*Id*.) He further alleges that the removal of Plaintiff's "immediate family members from Plaintiff's approved visitation list" violates Defendants' own policy and the removal was punitive. (*Id*.)

Plaintiff alleges that he went before a "STG hearing"[3] on December 13, 2023, and he was verbally informed of his STG designation. Plaintiff "was not informed that sanctions were being imposed, nor did Plaintiff receive[] any disposition concerning any sanctions." (*Id*.) Shortly thereafter, Plaintiff informed Defendant Ms. Moore, a Qualified Mental Health Professional, that Defendant Ward has "stripped" all of Plaintiff's family members, except for his mother, from Plaintiff's approved list. (*Id.*) Plaintiff alleges Ms. Moore than questioned Ward about this removal and Ms. Moore told Plaintiff that Mr. Ward said Plaintiff's grandparents were removed "because they got caught smuggling drugs." (*Id.* at 10.) Plaintiff disputed Mr. Ward's allegation to Ms. Moore, and Ms. Moore "agreed it didn't add up or make much sense." (*Id*.)

According to Plaintiff, after speaking with Ms. Moore on March 28, 2024, Plaintiff immediately filed a request to staff form to Mr. Ward, and he did not receive a response. (*Id*.) Plaintiff alleges his grievance about the removal of Plaintiff's family members from his visitation

---

[3] STG is an acronym for Security Threat Group.

list was not properly processed by Defendant Ms. McKie, the Grievance Branch Chief, and Defendant Snow, the Grievance Branch Coordinator. (*Id*. at 11–12.)

Plaintiff alleges that "the Defendants named above" violated Plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments by placing a ban on Plaintiff's phone, tablet, and visitation that: (1) was "atypical" from the treatment provided to other similarly situated inmates; (2) lacked any reasonable relation to a legitimate governmental interest; (3) subjected Plaintiff to "atypical and significant hardship"; and (4) was "enforced and maintained" without providing Plaintiff "any form of process or hearing related to said ban." (*Id.* at 13–21.) Plaintiff further alleges that "the Defendants named above enforced and maintained a 'sham' grievance process" in furtherance of a scheme to prevent Plaintiff from exhausting his administrative remedies pursuant to the Prison Litigation Reform Act. (*Id*. at 20.)

Plaintiff alleges that the foregoing conduct has caused him mental health issues, weight loss, sleep issues, digestive problems, loss of appetite, and pain and anguish from being unable to "speak or see any family or friends in over three (3) years and ongoing." (*Id*. at 21–22.) Plaintiff alleges he needs medication to treat his sleep issues and mental health issues. (*Id*. at 21.) Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief. (*Id*. at 22–23.) More specifically, Plaintiff asks for injunctive relief "which orders the ban placed on Plaintiff be lifted, and Plaintiff's immediate family members be reinstated on Plaintiff's visit list, as well as prohibiting Defendants from reinstating or enforcing said bans based on conjecture or speculation without more, incorporated [sic] with procedure protections in compliance with due process standards." (*Id.* at 22.)

### B. Procedural Background

Plaintiff filed this action on January 18, 2024, and service was authorized on Defendants on March 21, 2024. (Dkt. Nos. 1; 6; 7.) On April 29, 2024, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order. (Dkt. No. 14.) Defendants filed a response in opposition on May 9, 2024 (Dkt. No. 20), to which Plaintiff filed a reply on May 24, 2024 (Dkt. No. 21). After receiving an extension, Defendants filed an Answer to Plaintiff's Complaint on June 6, 2024. (Dkt. No. 23.) A Scheduling Order was then entered with motions to amend pleadings due July 8, 2024, discovery due September 5, 2024, and dispositive motions due October 7, 2024. (Dkt. No. 24.)

On July 10, 2024, Plaintiff filed a Motion to Amend the Complaint. (Dkt. No. 31.) On July 16, 2024, Defendant Brian Stirling filed a Motion to Dismiss. (Dkt. No. 38.) That same day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 39.) On July 23, 2024, Defendants filed a response to Plaintiff's Motion to Amend stating, "subject to the Motion to Dismiss Director Stirling, . . . the Defendants do not oppose Plaintiff's Motion to Amend his Complaint." (Dkt. No. 41.) The Court issued an Order granting Plaintiff's Motion to Amend on July 24, 2024, and found the sufficiency of Plaintiff's claims against Defendant Stirling is better addressed through the resolution of the Motion to Dismiss, once it is ripe. (Dkt. No. 42 at 2.) Plaintiff filed a response to the Motion to Dismiss on July 29, 2024 (Dkt. No. 46), to which Defendants filed a reply on August 5, 2024 (Dkt. No. 53).

Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Dkt. No. 14) and Defendant Brian Stirling's Motion to Dismiss (Dkt. No. 38) and are ripe and ready for the Court's review.

**DISCUSSION**

A. **Defendant Stirling's Motion to Dismiss (Dkt. No. 38)**

1. **Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). This court must accept a complainant's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).

Because Plaintiff is representing himself, this standard must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2. **Analysis**

Defendant Stirling briefly argues for dismissal because Plaintiff "has not alleged how Defendant Stirling personally did anything which purportedly violated Plaintiff's civil rights."

(Dkt. No. 38-1.) Stirling asserts that he is only mentioned "directly" in the "Complaint where [Plaintiff] alleges that he sent an RTSM to Director Stirling through General Counsel and to the Warden." (*Id*.) Plaintiff disputes that he has failed to sufficiently allege any claims against Stirling. (Dkt. No. 46-1.)

As shown above, the Amended Complaint alleges that Plaintiff's "telephone, tablet, and visitation" ban was "implemented at the direction of Brian Stirling" and other SCDC officials when Plaintiff arrived at Perry in July 2021. (Dkt. No. 44 at 5.) The Amended Complaint further alleges that this ban, *inter alia*, was "atypical" from the treatment provided to other similarly situated inmates; lacked any reasonable relation to a legitimate governmental interest; and subjected Plaintiff to "atypical and significant hardship." (Dkt. No. 13–21.) Based on these allegations, which the Motion to Dismiss does not acknowledge, the undersigned recommends Plaintiff has sufficiently stated a § 1983 claim against Stirling based on his personal involvement in allegedly implementing the ban at issue. *See Buff v. Stirling*, No. 5:14-cv-03022-TLW, 2015 WL 1578845, at *5 (D.S.C. Apr. 9, 2015) (denying motion to dismiss inmate's § 1983 claims against Director Stirling arising from his role as SCDC Director in implementing certain policies).

Given that Defendant Stirling offers no other basis for his dismissal, the undersigned recommends the Motion to Dismiss (Dkt. No. 38) be denied.

    **B.  Plaintiff's Motion for Injunctive Relief (Dkt. No. 14)**

      **1.  Standard**

"The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Dyke v. Staphen*, No. 6:18-cv-402-TMC-KFM, 2018 WL 2144551, at *1 (D.S.C. Apr. 19, 2018), *adopted by*, 2018 WL 2136062 (D.S.C. May 9, 2018); *see also Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (showing that the standard for a temporary restraining

7

order is the same as that applied to motions for preliminary injunction). To obtain a preliminary injunction or a temporary restraining order, a party must make a "clear showing" that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008); *see also, Smith v Ozmint*, 444 F. Supp. 2d 502, 504 (D.S.C. 2006). All four requirements must be satisfied in order for relief to be granted. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Because Plaintiff is representing himself, this standard must be applied while liberally construing his filings in this case. *See Erickson*, 551 U.S. at 94.

### 2.    Analysis

In his Motion, Plaintiff summarizes the allegations in his Amended Complaint about the ongoing three-year ban on Plaintiff's use of tablets and the telephone "to contact friends or immediate family" as well as any "visitation with [Plaintiff's] immediate family or friends." (Dkt. No. 14-1 at 3.) In a declaration submitted with his Motion, Plaintiff claims that these bans have been implemented and enforced without any due process and he has been told this "treatment will continue until I resolve criminal charges the state brought against me resulting from the 2018 Lee Corr. Inst. Riot." (Dkt. No. 14-2 at 1.) According to Plaintiff, Defendants are seeking to force Plaintiff "into an involuntary guilty plea and/or punish me for exercising my protected right to seek a trial by jury at the request of the State's special prosecutor Mr. Barney Giesie." (*Id.*) Plaintiff argues that without an injunction, Defendants will continue to violate his constitutional rights through the enforcement of the ban at issue. (*Id.* at 2.)

Based on the foregoing, Plaintiff asks that the Court enjoin Defendants from: "(1) placing a total ban on Plaintiff's access to telephone/tablet use to communicate with immediate family and/or friends; (2) banning and/or denying Plaintiff's visitation with immediate family; and (3) denying Plaintiff the policy-prescribed treatment/privileges associated with Plaintiff's classification and custody level." (Dkt. No. 14 at 1–2.) Plaintiff further asks the Court to find that Defendants "are restrained from" the foregoing conduct and to order that Defendants "cease violating Plaintiff's constitutional's right to 'due process,' 'equal protection,' and to be free from 'discrimination.'" (*Id*. at 2.)

In response to Plaintiff's Motion, Defendants have submitted a brief along with an affidavit from Defendant Dennis Patterson, the Assistant Deputy Director for SCDC. (Dkt. Nos. 20; 20-2.) Patterson avers that Plaintiff is serving a life sentence and is not eligible for parole. (Dkt. No. 20-2 at 1.) According to Patterson, Plaintiff is believed to have been involved in the Lee Correctional Institution riots of 2018, and he was indicted for his alleged role. Plaintiff was transferred out of state on June 19, 2018, and he returned to South Carolina on July 3, 2021 "to appear in court for new criminal charges related" to the riots. (*Id.*) After being processed, Plaintiff was transferred to the RHU at Perry on July 9, 2021 "due to his heightened custody level." (*Id*.) Patterson avers that RHU "is the second most secure housing area within SCDC" and the "Substantial Security Risk ["SSR"] Unit is the most secure and restrictive housing unit within SCDC.' (*Id*. at 1–2.) Patterson avers that he and other SCDC officials "received information that the name of a confidential informant related to the Lee Correctional Institution riots was going to be revealed. It is imperative that SCDC control access of confidential information and the name of informants for the safety of witnesses and SCDC employees." (*Id*. at 2.) According to Patterson, based on this information, "a

decision was made by the Deputy Director of Operations that Inmate Green be moved to the [SSR] Unit." (*Id*.)

> Specific to the issues raised by Plaintiff, Patterson avers that Plaintiff
>
> can use the telephone to make legal calls, but no other calls due to the security concern outlined above. [Plaintiff] does have access to a tablet for purposes of legal research and to access the kiosk system. Per SCDC policy, [Plaintiff] is required to make a request twenty-four (24) hours in advance and would have access to a tablet from 8:00 am to 5:00 pm. Inmates who are housed in the [SSR] Unit with a behavioral level of 2 or 3 are required to go through the warden for visits. Plaintiff requested visits while in the RHU. Those were denied for security issues involved concerning the confidential informant and the threat to both witnesses and employees of SCDC. Plaintiff has not requested any visits since being in the [SSR] Unit.

(*Id*.) Patterson further avers that the "restrictions on visits and phone calls not related to legal calls have been made solely for the protection of witnesses, including the confidential informant, and SCDC employees." (*Id*.) Patterson avers that the restrictions "are not made to punish [Plaintiff] and are certainly not related to any specific outcome of the criminal charges presently pending against [him]." (*Id*.) Citing Patterson's affidavit testimony, Defendants argue that Plaintiff's Motion should be denied pursuant to the *Winter* factors. (Dkt. No. 20.)

In his reply brief, Plaintiff claims he did not receive Patterson's affidavit with Defendants' response brief.[4] (Dkt. No. 21 at 2.) Plaintiff disputes that he is "responsible in any way and/or in control of revealing the name of the confidential informant." (*Id*. at 3.) Plaintiff further claims that the "confidential informant is no longer serving time within the [SCDC]" and "Defendants again provide no evidence to suggest any risk to witnesses exist." (*Id*. at 4.) Additionally, Plaintiff asserts that 29 "inmates were indicted as a result of the Lee" riot, "yet only Plaintiff has been placed on

---

[4] Given Plaintiff's comprehensive briefing, and that Defendants largely quoted the entirety of Patterson's affidavit testimony in their response brief, the undersigned finds Plaintiff has not been prejudiced by this omission. However, the Clerk of Court is instructed to include Patterson's affidavit (Dkt. No. 20-2) along with the mailing of this Report and Recommendation.

SSR Supermax." (*Id*. at 5; Dkt. No. 21-1.) Plaintiff disputes Defendants' assertion that he has not made visitation requests since being in the SSR Unit and argues that Defendants have failed to show why the existing security measures for inmates housed in RHU are not adequate for Plaintiff. (*Id*. at 9–10.)

Upon careful review, the undersigned finds that Plaintiff has failed to make the required showing under *Winter*. First, Plaintiff has not made a clear showing that he is likely to succeed on the merits of his Amended Complaint. At this time, Plaintiff has only his conclusory allegations to support his claims, and Defendants have argued there are legitimate penological interests in implementing and enforcing the ban at issue. Further, Plaintiff has failed to make a clear showing that he will suffer irreparable harm absent the injunctive relief. Though Plaintiff will continue to be subject to the ban if his Motion is denied, the deprivation would be temporary if Plaintiff ultimately prevails in his case.

Finally, Plaintiff has failed to establish that the balance of equities tips in his favor, and he has failed to show that an injunction is in the public interest. As the Fourth Circuit explained in *Wetzel v. Edwards*:

> The realities of running a penal institution are complex and unique to the prison environment. Federal courts have traditionally been reluctant to interfere in the problems of prison administration. Indeed, the decisions made by prison administrators in their informed discretion have been accorded "wide-ranging deference" by the federal courts. . . . *Furthermore, federal courts have an additional reason to show deference to the decisions of prison authorities, where a state penal institution is involved. Procunier v. Martinez, [416 U.S. 396 (1974)]*. The possible injury to the defendant-appellants if the preliminary injunction stands is potentially grave. The informed discretion of these penological experts could be radically limited with respect to inmate transfers specifically and, more importantly, with respect to prison discipline in general.

635 F.2d 283, 288 (4th Cir. 1980) (emphasis added); *see also Sweet v. S. Carolina Dep't of Corrections*, 529 F.2d 854, 859 (4th Cir.1975) (describing federal court's deference to prison

11

administrators and all administrative matters unless the condition arises to the level of a constitutional violation).

As Plaintiff has not demonstrated a likelihood of success on the merits or more than a possibility of irreparable harm, and because the balance of the equities and the public interest involved do not warrant the extraordinary remedy of injunctive relief, Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 14) should be denied.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Defendant Stirling's Motion to Dismiss (Dkt. No. 38) be DENIED and Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Dkt. No. 14) be DENIED.

IT IS SO RECOMMENDED.

August 8, 2024
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).